**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | **Criminal Action No.: 9:23-cr-833-RMG** |
| | ) | |
| v. | ) | |
| | ) | |
| Peter J. Strauss, | ) | **Filed Under Seal Per Court Order** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S MOTION FOR RECUSAL OR DISQUALIFICATION AND DISCOVERY, AND MEMORANDUM IN SUPPORT

The Defendant, Peter J. Strauss ("Strauss" or "Defendant"), by and through his undersigned counsel, hereby respectfully moves (the "Motion") the Honorable Richard M. Gergel to recuse or disqualify himself from this case. The Motion includes a request for discovery. The Motion is respectfully made pursuant to 28 U.S.C. §§ 144 and 455, and the Due Process Clause of the Fifth Amendment. This Motion is filed under seal pursuant to Court Order. ECF # 10.

## I.  PROCEDURAL HISTORY

On October 12, 2023, Defendant executed a plea agreement with the United States Government ("United States" or "Government"), by and through the U.S. Attorney's Office for the District of South Carolina ("USAO"), agreeing to plead guilty to a violation of 18 U.S.C. §§ 2232(a) and 2.

On October 17, 2023, the Government filed a motion to seal (ECF # 1), a one-count Information alleging a violation of 18 U.S.C. §§ 2232(a) and 2 (ECF # 2), a Penalty Sheet (ECF # 3) and the Plea Agreement (ECF # 5).

On November 3, 2023, U.S. District Judge Richard M. Gergel ("Judge Gergel") granted the motion to seal. ECF # 10.

motion for recusal 2023-12-06

On November 6, 2023, in a hearing before Judge Gergel, Strauss pleaded guilty to the said one-count Information.

The parties await the issuance of a Pre-Sentence Report ("PSR") from the United States Probation Office, and a sentencing hearing is not yet scheduled.

Strauss continues to cooperate with the USAO.

## II.  FACTUAL BACKGROUND

Defendant Strauss is an attorney and had a law practice, Strauss Law Firm, LLC ("SLF" or "Strauss Law Firm") that operated on Hilton Head Island, South Carolina, for approximately 15 years.  The Strauss Law Firm is now closed.  Strauss Law Firm's focus included captive insurance, estate planning, tax planning and corporate law.  Strauss also operated a captive insurance management company, Hamilton Captive Management, LLC ("Hamilton"), which managed over hundred captive insurance companies for clients from across the United States.[1]

Around 2015, Jeffrey Carpoff, a purported billionaire, became a captive insurance client of Strauss and Hamilton.  Carpoff had founded a company which purportedly manufactured mobile solar-powered generators. Carpoff's company, DC Solar Solutions, Inc. ("DC Solar"), generally promised investors federal income tax credits from its solar equipment and lease payments from the leases of thousands of its mobile solar generators.  Ultimately, DC Solar proved to be a giant Ponzi scheme and a fraud upon its investors.  Unknown to Strauss and DC

---

[1] Captive insurance companies are wholly-owned subsidiaries of operating businesses that self-insure risks of the parent business pursuant to Internal Revenue Code § 831(b) and 806. Hamilton was founded in 2012 to provide turn-key services for middle market captive clients, including evaluating captive opportunities (underwriting, risk assessment and actuarial reports); captive insurance formation (design, drafting and executing of participation agreement, share issuance, directors resolution and service agreement); captive insurance management (policy design, banking/financial reporting, regulatory compliance, claims administration, legal/regulatory guidance); and reinsurance facilitation (risk pooling of separate captives through reinsurance provider).

motion for recusal 2023-12-06

Solar's investors, most of the purported mobile solar generators did not exist, and investors in DC Solar's lease programs were being paid from new investors' money and not from lease payments.

Through 2018, Strauss was only generally aware of the nature of Carpoff's business, and was completely unaware of the frauds that Carpoff had been committing with DC Solar. During this time, Strauss was mainly providing Carpoff (and his wife) captive insurance services, and assistance with personal real estate investments, estate planning and life insurance. Strauss hoped to develop and operate a Family Office for the Carpoffs.

On December 18, 2018, a search warrant was executed by federal law enforcement on Carpoff's California residence and business office.

On December 19, 2018, unknown to Strauss, Carpoff's wife, Paulette, arranged a wire transfer of $5,000,000 to the SLF trust account. Later that day, after this money was wired to SLF's trust account, Strauss was contacted by the national law firm Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), primarily through partner Armando Gomez ("Gomez"), and instructed to wire $2,000,000 to Skadden for a retainer deposit.

**From:** "Gomez, Armando" <Armando.Gomez@skadden.com>
**Date:** December 19, 2018 at 3:23:57 PM EST
**To:** "'pstrauss@thestrausslawfirm.com'" <pstrauss@thestrausslawfirm.com>
**Subject: Wire instructions**

Peter,

Further to our discussion a short while ago, I understand that Jeff Carpoff has asked you to arrange a wire to Skadden for a retainer. The wire can be sent to Citibank at the following instructions:

CITIBANK, N.A.
399 Park Avenue
NEW YORK, NY 10022

ABA #
Swift Code          (required for international wires only)
FOR CREDIT TO:
ACCOUNT              of Skadden, Arps, Slate, Meagher & Flom LLP

My business address and contact information is set forth below. Once the wire has been sent, please send me the wire details so that we can confirm receipt. Thank you.

**Armando Gomez**
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W. | Washington | D.C. | 20005-2111
T: 202.371.7868 | F: 202.661.8284 | M: 703.819.1788
armando.gomez@skadden.com

Skadden

Skadden attorneys, including Gomez, Annie Li, Van Durrer and Jack DiCanio, and/or the

Carpoffs, continued to direct Strauss and SLF to disburse money to various other professionals,

including other lawyers and bankruptcy consultants for the Carpoffs and their companies.

On December 28, 2018, pursuant to Carpoff's instructions, Deltec, his bank in Nevis,

wired $3,000,000 from his DC Solar International, Inc. ("DC Solar International") account to

Port Royal Insurance Company for partial payment of his captive insurance company premiums

of $4,500,000 which were due to Hamilton at the time.

On January 15, 2019, pursuant to Carpoff's instructions, Deltec, his bank in Nevis, wired

another $3,000,000 from his DC Solar International account to the SLF trust account.  This

$3,000,000 was used, *inter alia*, to pay for SLF attorney's fees which were due at the time, and

other professional fees and captive insurance commutation fees.

On April 23, 2019, Solar Eclipse Investment Fund XXXV ("Fund 35") and East West

Bank ("EWB") filed a complaint in federal court against the $5,000,000, *in rem*, in the SLF trust

account which was wired on December 19, 2018, and against Strauss Law Firm, *in personam*.[2]

The complaint generally alleged that the plaintiffs owned the $5,000,000, and the money was

unlawfully and fraudulently transferred to SLF's trust account by the FUND 35 manager, Halo

Management Services, LLC ("Halo").[3]  The complaint contained five causes of action, to wit, (1)

a declaratory judgment of the court for its *in rem* control of the remainder of the $5,000,000 in

the SLF trust account; (2) a declaratory judgment that the plaintiffs were entitled to the said

---

[2] ECF # 1, *Solar Eclipse Investment Fund XXXV, LLC and East West Bank, Plaintiffs, v. $5,000,000 U.S. Dollars Deposited to IOLTA Account of the Strauss Law Firm, LLC in rem, and the Strauss Law Firm, LLC, in personam*; Civil Action No. 9:19-cv-01176-RMG (D.S.C.) (the "Fund 35-EWB Case").

[3] Upon information and belief, Halo was controlled by the Carpoffs.

motion for recusal 2023-12-06

remaining funds in the SLF trust account; (3) an accounting from the Strauss Law Firm of all

disbursements of the original $5,000,000; (4) a constructive trust of the remainder of the

$5,000,000 in the SLF trust account; (5) rescission of any agreement authorizing the original

transfer of the $5,000,000 to the SLF trust account; and, (6) injunctive relief enjoining SLF from

any further disbursements of the remainder of the $5,000,000 in the SLF trust account.

On May 6, 2019, Judge Gergel held a hearing in the Fund 35-EWB Case. *See* Exhibit 1

(Transcript of 5/6/2019 hearing).[4]  During this hearing, Judge Gergel made the following

statements:

> [I]t appears that the $5 million transfer to the Strauss Law Firm is likely an illegal
> transfer, and those recipients [to whom the funds were disbursed] are in receipt of
> funds that should not have gone to them from this fund. … it was certainly done in
> a way that appears surreptitious to me. *Id.* at p. 10, lines 17 - 23.

> I'[m] going to order Mr. Strauss into the Court here, and I'm going to order him to
> produce all the documents related to the instructions he received for these transfers.
> *Id.* at p. 11, lines 4 - 7.

> I think it's looking pretty dubious that they have a right to those funds, and
> particularly under the circumstances where Skadden Arps [law firm] apparently
> particularly is involved and these other criminal defense firms are fully aware of
> the circumstances here, that there has been -- I mean, the press accounts, there were
> dozens of FBI agents circling Carpoffs [Mr. Strauss's clients'] home. Judge Beasley
> tells me that every hearing he has, he has SEC investigators and FBI agents sitting
> in the audience, and I don't mind to say that my head of my U.S. Attorney's Office
> is sitting in the back row here right now, and there's a lot of Government interest
> in all of this. *Id.* at p. 12, lines 10 - 20.

> Let him [Strauss] know that if he seems to have any difficulty getting here, I'm glad
> to have him escorted by the marshals.  *Id.* p. 13, lines 8 - 10.

> These transactions appear to be unlawful. They would not be protected by privilege,
> and he appears – it's not quite clear what capacity Mr. Strauss actually received
> these funds since he's taking some of the funds himself and putting them in
> accounts he controls. *Id.* at p. 13, line 22 - p. 14, line 1.

---

[4] All cited Exhibits and Affidavits are attached hereto and incorporated herein by reference.

motion for recusal 2023-12-06

On May 9, 2019, Judge Gergel held another hearing in the Fund 35-EWB Case. *See* Exhibit 2 (Transcript of 5/9/2019 hearing). During this hearing, Strauss asserted the Fifth Amendment in response to many questions posed to him by the judge and counsel for the plaintiffs. Judge Gergel made the following statement as a result:

> Mr. Strauss, I'm going to put you on notice that I intend to advise the South Carolina Supreme Court that you took the Fifth Amendment today in a matter involving potential criminal activity, and I would suggest you self-report your appearance here today and your actions." *Id.* at p. 33, lines 8 - 12.

Judge Gergel made this statement while contemporaneously recognizing the criminal implications regarding the transactions relating to the $5,000,000. *Id.* at p. 68, lines 21 – 24.

Defendant Strauss submits an affidavit (Exhibit 3) in support of this Motion that he believes in good faith that Judge Gergel has a personal bias against him and in favor of the USAO, and that Judge Gergel's impartiality is reasonably questioned.

This Motion is further supported by an affidavit (Exhibit 4) and expert opinion by attorney Barbara Seymour, an ethics expert and the former Deputy Disciplinary Counsel of the South Carolina Office of Disciplinary Counsel. As set forth in more detail below, Ms. Seymour concludes that it "is my expert opinion . . . that the judge should recuse himself from the criminal matter against Mr. Strauss to avoid the appearance of impropriety." *Id.* at 5.

## III.  LAW

The Motion is made pursuant to 28 U.S.C. §§ 144 and 455(a) and (b)(1), and the Due Process Clause of the Fifth Amendment to the United States Constitution.

28 U.S.C. § 455 provides, in pertinent part, as follows:

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; …

28 U.S.C. § 144 provides as follows:

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

Section 455(a) requires disqualification even if the judge does not have actual personal bias or prejudice. *See* 13D *Wright and Miller*, Jurisdiction § 3549.

Under § 455(a), a "federal judge is obliged to recuse himself if a person with knowledge of the relevant facts might reasonably question his impartiality." *United States v. Cherry*, 330 F.3d 658, 665 (4th Cir. 2003). "If a judge possesses actual or apparent prejudice either for or against a party, federal law provides the aggrieved party with a statutory remedy," to wit, § 455. *Id.*

Under § 455(a), even close cases must be resolved in favor of disqualification. *In re Boston's Children First*, 244 F.3d 164, 167 (1st Cir. 2001); *United States v. Evans*, 262 F. Supp. 2d 1292, 1294 (D. Utah 2003). Regarding the necessity of recusal, it "is not the reality of bias or prejudice but its appearance" that matters. *Microsoft Corp. v. United States*, 530 U.S. 1310, 1302 (2000).

Likewise, Courts have recognized that the Code of Judicial Conduct mandates recusal even if there is only an appearance of impropriety or partiality. *Microsoft Corp. v. United States*, 253 F.3rd 34, 114-15 (D.C. Cir 2001) ("The very purpose of § 455(a) is to promote confidence in

the judiciary by avoiding even the appearance of impropriety whenever possible . . . Appearance

may be all there is, but that is enough to invoke the Canons [of Judicial Conduct] and § 455.");

Code of Judicial Conduct, Canon 2A ("A judge should respect and comply with the law and

should act at all times in a manner that promotes public confidence in the integrity and

impartiality of the judiciary.")  As noted by the Fifth Circuit Court of Appeals in *Potashnick v.*

*Port City Const. Co.*, 609 F.2d 1101, 1111 (5th Cir. 1980):

> This overriding concern with appearances, which also pervades the Code of Judicial
> Conduct and the ABA Code of Professional Responsibility, stems from the recognized
> need for an unimpeachable judicial system in which the public has unwavering
> confidence…. Any question of a judge's impartiality threatens the purity of the judicial
> process and its institutions.

In applying § 455, "it is appropriate to consider the risk of injustice to the parties in the

particular case, the risk that the denial of relief will produce injustice in other cases, and the risk

of undermining the public's confidence in the judicial process." *Liljeberg v. Health Servs.*

*Acquisition Corp.*, 486 U.S. 847, 864 (1988).  If a judge fails to recuse himself when the statute

required recusal, even a final judgment can be reopened. *Id.* at 863-64.

While critical or hostile judicial comments or remarks during a proceeding or prior

proceeding do not necessarily require recusal, judicial comments against a party are grounds for

recusal if "they display a deep-seated favoritism or antagonism that would make fair judgment

impossible." *Liteky v. United States*, 510 U.S. 540, 556 (1994).  There is no requirement that

biased comments or prejudiced opinions justifying recusal arise from an extrajudicial source.  *Id.*

at 555 ("neither the presence of an extrajudicial source necessarily establishes bias, nor the

absence of an extrajudicial source necessarily precludes bias;" extrajudicial source is simply a

"factor" to be considered).  However, biased judicial comments or prejudiced opinions derived

from extrajudicial sources are a proper basis for recusal.  *Sales v. Grant*, 158 F.3d 768, 781 (4th

Cir. 1998) (biased judicial remarks may support a recusal challenge "if they reveal an opinion that derives from an extrajudicial source").

A judge should also disqualify himself in circumstances where "he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."  28 U.S.C. § 455(b)(1); *Sine v. Local No. 992 Int'l Bhd. of Teamsters*, 882 F.2d 913, 914 (4th Cir. 1989).

The standard to determine impartiality is an objective test requiring a judge to disqualify himself whenever his impartiality might reasonably be questioned. The inquiry is whether a reasonable person would have a reasonable basis for questioning the judge's impartiality, not whether the judge is in fact impartial.  *In re Beard*, 811 F.2d 818, 827 (4th Cir. 1987) (recognizing the right to petition the appellate court for a writ of mandamus in the event a judge fails to recuse, and holding the "proper test to be applied is whether another with knowledge of all of the circumstances might reasonably question the judge's impartiality.").  Disqualification is required "if a person with knowledge of the relevant facts might reasonably question [the judge's] impartiality."  *Cherry*, 330 F.3d at 665.

The standard for recusal under 28 U.S.C. § 144 is the same as under § 455, to wit, "'whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.'"  *Mayes v. Leipziger*, 729 F.2d 607 (9th Cir. 1984); *United States v. Studley*, 783 F.2 d 934, 939 (9th Cir. 1986).

The Due Process Clause of the Fifth Amendment also mandates a requirement of judicial impartiality, and, like Section 455(a), has been implemented by an objective standard that does

not require proof of actual bias.[5]  *United States v. Liggins*, No. 22-1236, 2023 U.S. App. LEXIS 20040 (6th Cir. Aug. 3, 2023); *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 883-87 (2009) (due process analysis of recusal under the Fourteenth Amendment); *Aiken County v. BSP Div. of Envirotech Corp.*, 866 F.2d 661, 678 (4th Cir. 1989) ("The due process clause protects not only against express judicial improprieties but also against conduct that threatens the 'appearance of justice.'"); *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016) (question is not whether a judge harbors an actual bias but whether, as an objective matter, there is an unconstitutional potential for bias).

Like the statutory bases for recusal, the Due Process Clause looks at the totality of the circumstances as to whether recusal is constitutionally required.  *Rippo v. Baker*, 580 U.S. 285, 287 (2017) (Supreme Court precedents require courts to ask "whether, considering all the circumstances alleged, the risk of bias was too high to be constitutionally tolerable").  While recusal under Due Process is a higher bar than under the statutes, recusal is required when "the *probability* of actual bias rises to an unconstitutional level." *Caperton*, 556 U.S. at 887 (emphasis added); *In re Murchinson*,  349 U.S. 133, 136 (1955) (Due Process "may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way 'justice must satisfy the appearance of justice.'").

## IV.  ARGUMENT

With much respect, Judge Gergel should be recused or disqualified from this case.  Judge Gergel has adversely commented on the Defendant's inviolate right to assert the Fifth

---

[5] To the extent the Due Process Clause of the Fourteenth Amendment is applicable to a motion to recuse a federal judge, Defendant invokes the same.  The due process analysis regarding recusal under both the Fifth and Fourteenth Amendments are the same.

Amendment in a related proceeding.  Further, he sought to punish Defendant for asserting such rights by reporting him to the bar in clear violation of U.S. Supreme Court precedent, and he further advised Defendant to self-report his Fifth Amendment invocations to the Office of Disciplinary Counsel.  Judge Gergel threatened to have Defendant escorted to a court hearing by the U.S. Marshall's Service when there was no indication Defendant would not comply. Judge Gergel has expressed personal prejudice towards the Defendant and personal bias towards the USAO.  Judge Gergel has sought and obtained personal knowledge of facts outside of the current and former legal proceedings which will likely influence his ability to be impartial in this case. Under the totality of the circumstances, Judge Gergel's impartiality *might* reasonably be questioned, and his recusal is mandated.

 As noted by ethics expert Seymour in her Affidavit (Exhibit 4 at 5), in her opinion, "the judge should recuse himself from the criminal matter against Mr. Strauss to avoid the appearance of impropriety."  In her Affidavit (Exhibit 4 at 5-6) ethics expert Seymour further points out as follows:

> A federal judge should recuse himself from a sentencing hearing in a criminal case when there is a reasonable appearance of personal bias, even if the judge believes he can be impartial. This is a fundamental principle of judicial ethics and fairness and it helps ensure that the criminal justice system maintains public trust and confidence. There are several reasons why recusal in such situations is essential:

>> Judicial Code of Conduct: Federal judges are bound by a Code of Conduct, which outlines their ethical obligations. One of the key principles in this code is that judges must avoid both actual bias and the appearance of bias. This means that judges should not only be impartial but also avoid situations where their impartiality might reasonably be questioned.

>> Preservation of Judicial Impartiality: The cornerstone of a fair and just legal system is the impartiality of judges. Judges must be seen as unbiased and neutral arbiters who apply the law objectively. This perception of impartiality is crucial to maintain public confidence in the judiciary.

Public Perception: Even if a judge genuinely believes he can be impartial, the perception of bias can undermine the public's trust in the judicial system. If the public believes a judge is personally biased or has a potential conflict of interest, it can erode confidence in the fairness of the proceedings.

Equal Protection Under the Law: The principle of equal protection under the law requires that all individuals receive the same treatment and consideration in court, regardless of their background, status, or the nature of the case. Any hint of bias, even if unintentional, can raise doubts about whether this principle is being upheld.

Fair Trial Rights: In criminal cases, the defendant has a Constitutional right to a fair trial. This includes the right to be judged by an impartial tribunal. If a judge's impartiality is in question due to an appearance of bias, it can infringe upon the defendant's Constitutionally protected fair trial rights.

Avoiding Litigation and Appeals: When a judge's impartiality is questioned and not addressed through recusal, it can lead to prolonged litigation and appeals. This is costly, time-consuming, and may not ultimately result in a just outcome. Recusal can help prevent such complications.

Maintaining the Integrity of the Judiciary: The integrity of the judicial system relies on judges who adhere to the highest ethical standards. Recusal in cases where impartiality might reasonably be questioned is a proactive step to maintain the reputation and credibility of the judiciary.

## A. ADVERSE FIFTH AMENDMENT COMMENTS

In the case of *Spevack v. Klein*, 385 U.S. 511, 514 (1967), the U.S. Supreme Court clearly held that a witness, including an attorney, has the "**unfettered**" right to "**remain silent**" by asserting Fifth Amendment protections and shall "**suffer no penalty** . . . **for such silence**." (emphasis added)  The U.S. Supreme Court reversed the disbarment of attorney Spevack because the adverse action against him was based upon his assertion of the right to remain silent in a New York disciplinary proceeding.

However, after Strauss asserted his right to remain silent pursuant to the Fifth Amendment during the May 9, 2019 hearing in the Fund 35-EWB Case, Judge Gergel reacted with the following:

```
 6          THE COURTROOM DEPUTY:  Sir, may I have those
 7    documents?  Thank you.
 8          THE COURT:  Mr. Strauss, I'm going to put you on
 9    notice that I intend to advise the South Carolina Supreme Court
10    that you took the Fifth Amendment today in a matter involving
11    potential criminal activity, and I would suggest you
12    self-report your appearance here today and your actions.
```

The Judge obviously decided that Strauss's invocation of the Fifth Amendment was a violation of the ethical duties of an attorney, informed Strauss that he would advise the S.C. Supreme Court of the fact "that you took the Fifth Amendment today," and suggested Strauss self-report the same. Judge Gergel sought to punish Strauss for the assertion of his Constitutional rights, despite the fact that the Judge ascertained that the matter involved "potential criminal activity." The Judge's comments can only be perceived as threatening, and were in clear violation of the Supreme Court's holding in *Spevack* that an attorney has an unfettered right to remain silent and cannot suffer any penalty for doing so.

As the *Spevack* Court noted, "'penalty' is not restricted to fine or imprisonment…. It means … the imposition of any sanction which makes assertion of the Fifth Amendment privilege 'costly.'" *Id.*, at 515.[6]

The Supreme Court has noted that the Fifth Amendment "not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him or her not to answer official questions put to him or her in any other proceeding,

---

[6] The "Fifth Amendment ... forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Griffin v. California*, 380 U.S. 609, 615 (1965); *Tehan v. Unites States ex rel. Shott*, 382 U.S. 406 (1966) ("adverse comment by a prosecutor or trial judge" upon a defendant's failure to testify violates the federal privilege against compulsory self-incrimination).

civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v Turley*, 414 U.S. 70, 77 (1973).

As opined by ethics expert Seymour, "[i]n fact, it is not professional misconduct for a lawyer to assert Fifth Amendment rights." Exhibit 4 at 7. There is no duty for a judge to report an attorney for disciplinary action, including under the S.C. Rules of Professional Conduct, because the attorney has lawfully asserted the Fifth Amendment right to remain silent.

Any such report of an attorney's supposed professional misconduct by a judge to the South Carolina Office of Disciplinary Counsel, or threat of the same, for invoking the Fifth Amendment, is inconsistent with Supreme Court precedent and the rules of professional responsibility. Such an unfounded report, or threat of the same, necessarily demonstrates a deep-seated and unequivocal lack of impartiality and/or personal animus. At the very least, such a report would reflect that the offending judge's "appearance of impartiality" is reasonably questioned.

Furthermore, during the May 9th hearing, Judge Gergel instructed Strauss's lawyer to cease communicating with Strauss while he was on the witness stand. Because Strauss was not experienced in criminal law and was unsure when to assert his constitutional right to remain silent, Strauss's lawyer had been trying to assist Strauss as to when to invoke the Fifth Amendment. Exhibit 3 at 3 (Strauss Affidavit).

As noted by ethics expert Seymour, given "that the law is clear that invoking the privilege against self-incrimination is not professional misconduct, the judge's reaction and response to Mr. Strauss's refusal to answer certain questions related to his clients' financial transactions would cause a reasonable defendant concern regarding the judge's ability to decide his fate in a fair and impartial manner." Exhibit 4 at 8. Due to Judge Gergel's comments and

perceived threats regarding his assertion of the Fifth Amendment, as well as the Judge's prohibition of his counsel from assisting with the invocation of the Fifth Amendment, Strauss likewise reasonably questions the judge's impartiality towards him.  *See* Exhibit 3.

## B. EXTRA-JUDICIAL AND *EX PARTE* INVESTIGATIONS AND COMMUNICATIONS

As a further indication of Judge Gergel's actual or perceived prejudice against Strauss and/or apparent lack of impartiality during the Fund 35-EWB Case, it is clear that Judge Gergel conducted extra-judicial and *ex parte* investigations and communications and learned material facts which were not in evidence provided by the parties.

Judge Gergel openly acknowledged that he had "been in communication with the Bankruptcy Court," and spoken to "Judge Beesley" about his bankruptcy hearings involving the Carpoffs' DC Solar and related companies.[7]  Judge Gergel knew that the $5 Million transferred to Strauss was not listed in the bankruptcy court as an obligation or liability, and that neither Fund 35 nor EWB were listed as creditors.  Exhibit 1 at pp. 11-12.  Apparently, Judge Beesley requested that Judge Gergel "do what I can to repatriate these [$5,000,000] funds[.]"  *Id.*  He selectively referenced that there were "press accounts" and "dozens of FBI agents circling the Carpoffs' home" at the time of the raid on December 18, 2018.  *Id.* at p. 12.  On the day the Carpoffs' warrants were executed, he knew that "DC Solar was defunct at that point, literally defunct. The lights were off, the staff was laid off, and all of its accounts were seized by the Federal Government"; that "all accounts of DC Solar had been seized . . . that the Carpoffs' personal

---

[7] Exhibit 1 at pp. 9-12.  Upon information and belief, former U.S. Bankruptcy Judge Bruce T. Beesley, of the District of Nevada, was, at the time, handling at least one bankruptcy case involving DC Solar or its affiliates.  *See In re Double Jump, Inc.*, Case No. 19-50102-BTB (D.Nev.).

accounts had been seized and all the corporations had been seized"; and that "it was in all the newspapers out there."[8] Exhibit 2 at pp. 51, 61.

He knew that Judge Beesley held numerous bankruptcy hearings, and that at "every hearing" he "has SEC investigators and FBI agents sitting in the audience." Exhibit 1 at p. 12. He knew that one day after the $5,000,000 wire transfer, the "Government has seized every asset they can of the Carpoffs." *Id.* at p. 10. On April 30, 2019, before any hearing took place, he apparently visited the Strauss Law Firm website in furtherance of his investigation, as was disclosed in ECF # 14, at footnote 1, as follows:

---

[1] The Strauss Law Firm is comprised of four professionals, including at least one attorney and one Certified Public Accountant, and provides "strategic solutions to high-net-worth individuals, families and business owners" with "experience in the legal, tax, insurance, and accounting arenas." *See* http://thestrausslawfirm.com/about (last visited, Apr. 30, 2019).

Clearly, Judge Gergel went outside the record of the Fund 35-EWB Case to personally investigate and obtain information and evidence that were material "to disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1); *Liteky*, 510 U.S. at 556 (judge must not rely "upon knowledge acquired outside" judicial proceedings nor display "deep-seated and unequivocal antagonism that would render fair judgment impossible"). Prior to the May 6th and May 9th hearings in the Fund 35-EWB Case, Strauss is unaware of any evidence introduced to the court that included descriptions of press accounts of the Carpoffs' businesses being raided by law enforcement or FBI agents "circling" their home. There was certainly no evidence in the record from the parties regarding communications of bankruptcy judge Beesley.

---

[8] One or more DC Solar entities filed for bankruptcy protection in or around February, 2019, and engaged a nationally recognized professional restructuring advisor to lead the reorganizations.

motion for recusal 2023-12-06

Canon 3A(4) of the Code of Judicial Conduct for U.S. Judges provides, in part, as follows:  "a judge **should not initiate**, permit, **or consider ex parte communications** or consider other communications concerning a pending or impending matter that are made outside the presence of the parties or their lawyers." (emphasis added)

While not binding on federal judges, Rule 2.9(C) of the American Bar Association's Model Code of Judicial Ethics also provides as follows:  "A judge shall not investigate facts in a matter independently, and shall consider only the evidence presented and any facts that may properly be judicially noticed."

That fact that Judge Gergel went outside the record to investigate and obtain evidence in the Fund 35-EWB Case, and his particular focus on the role that law enforcement played in the Carpoffs' bankruptcy matters and the news accounts of the FBI's raids of their home and businesses, naturally leads one in a position such as Strauss to reasonably and objectively question the neutrality and impartiality of the Judge.  This is particularly true in light of the many comments by Judge Gergel suggesting that Strauss participated in the criminal activity of his clients, the Carpoffs, with respect to the $5,000,000 wire transfer.  *Liteky*, 510 U.S. at 545, n. 1 (disqualification warranted when bias or prejudice stem from an extrajudicial source and "result in an opinion on the merits [of a case] on some basis **other than what the judge learned from his participation in the case."**) (emphasis added).

For instance, during the Fund 35-EWB Case May 6th and May 9th hearings, Judge Gergel stated or commented as follows:

- "[L]et's be candid. To the extent [the plaintiff's counsel's] hypothesis is correct, **anybody involved in the transaction potentially has criminal implications tied to them** … [i]f they're actually involved in converting the funds[.]" Exhibit 2, p. 68, lines 21 - 24 (emphasis added)

- "[I]t appears that the $5 million ***transfer to the Strauss Law Firm is likely an illegal transfer***, and those recipients [to whom the funds were disbursed] are in receipt of funds that should not have gone to them from this fund. … it was certainly done in a way that appears surreptitious to me." <u>Exhibit 1</u>, p. 10, lines 17 – 23 (emphasis added)

- "I will say on the record that these [transactions] are not protected, attorney-client privilege. ***These transactions appear to be unlawful***. They would not be protected by privilege, and he appears – it's not quite clear what capacity Mr. Strauss actually received these funds since he's taking some of the funds himself and putting them in accounts he controls." <u>Exhibit 1</u>, p. 13, line 20 - p.14, line 1 (emphasis added)

- "I think ***it's looking pretty dubious that they have a right to those funds***, and ***particularly under the circumstances*** where Skadden Arps [law firm] apparently particularly is involved and these other criminal defense firms are fully aware of the circumstances here[.]" <u>Exhibit 1</u>, p. 12, lines 10 – 14 (emphasis added)

- The fund was to purchase mobile solar generators. It wasn't to pay all these lawyers and captive funds and all of this, and ***it was certainly done in a way that appears surreptitious to me***. It's one day after the Government has seized every asset they can of the Carpoffs. <u>Exhibit 1</u>, p. 10, lines 21 – 24 (emphasis added)

These comments and statements, which erroneously appear to criminally implicate Strauss with respect to the perceived unlawful $5,000,000 wire transfer, certainly raise objective, reasonable doubt as to whether Judge Gergel had formed a negative opinion about Strauss and his integrity. These pejorative comments and statements were based, in part, not on "facts introduced or events occurring in the course of the current, or of prior proceedings[.]" *Liteky,* 510 U.S. at 555. When coupled with Judge Gergel's extra-judicial investigations and *ex parte* communications with respect to the Fund 35-EWB Case, at a minimum, these comments and statements objectively and reasonably put into question the appearance of his impartiality towards Strauss in the case at bar. As noted by ethics expert Seymour, the "judge's statements regarding his communications with the bankruptcy judge and his pledge to use the civil case to assist in marshalling assets for the debtors' creditors would cause a reasonable person to question his impartiality." <u>Exhibit 4</u> at 9.

## C. UNWARRANTED THREAT OF ARREST

As a further indication of Judge Gergel's actual or perceived prejudice against Strauss and/or apparent lack of impartiality, during the May 6, 2019 hearing in the Fund 35-EWB Case, Judge Gergel indicated that, on three days' notice, he was going to order Strauss to come to court, produce documents and testify.

Judge Gergel then stated as follows:

Let him [Strauss] know that if he seems to have any difficulty getting here, I'm glad to have him escorted by the marshals.  Exhibit 1, p. 13, lines 8 - 10.

At this point in the Fund 35-EWB Case proceedings, there was absolutely no indication that Strauss would not abide by Judge Gergel's instructions or orders for him to attend the May 9th hearing.  Threatening to have the U.S. Marshall's Service "escort" Strauss to attend the hearing was simply a euphemism that he would be arrested.  Such a threat or strong suggestion was not necessary, and serves to underscore, at a minimum, the Judge's perceived prejudice against Strauss.  This threat or strong suggestion, at a minimum, certainly makes the Judge's appearance of impartiality toward Strauss reasonably questionable.

## D. REFERENCES TO, AND RELATIONSHIP WITH, THE U.S. ATTORNEY'S OFFICE

As a further indication of Judge Gergel's actual or perceived prejudice against Strauss and/or apparent lack of impartiality during the Fund 35-EWB Case, Judge Gergel made possessive reference to federal prosecutors attending the May 6, 2019 hearing.  During the said hearing, he stated as follows:  "I don't mind to say that **_my_** head of **_my_** U.S. Attorney's Office is sitting in the back row here right now, and **_there's a lot of Government interest in all of this_**."  Exhibit 1, p.12, lines 10 – 20 (emphasis added).

While Judge Gergel may have made innocent slips in characterizing the federal prosecutor attending the hearing and the federal prosecutor's office as his, the perception that he

has some ownership or close possessive relationship with them certainly raises the specter that

his impartiality towards Strauss might reasonably be questioned.  The Judicial Branch and the

Executive Branch (i.e., the U.S. Attorney's Office) are meant to be kept separate under the

Constitution. Upon information and belief, the prosecutor who Judge Gergel was referencing at

the hearing as "my head of my U.S. Attorney's Office" is the same prosecutor who is currently

prosecuting Strauss in the case at bar.

      Reasonable concerns about impartiality arise because Judge Gergel expressed an

indication that he knew that "there's a lot of Government interest in all of this."  Exhibit 1, p.12,

line 20.  Such knowledge of the Government's interest in the proceedings certainly reinforces the

perception that a close relationship exists between the prosecutor, the prosecutor's office and the

Judge.  There are certainly no indications in the docket sheet of the Fund 35-EWB Case that the

U.S. Attorney's Office received any formal notice of either the May 6th or May 9th hearings,

and the Government was not a party in the action or proceedings.  Given all these circumstances,

in addition to the fact that the current U.S. Attorney was also Judge Gergel's law clerk for about

five years,[9] Strauss has a legitimate concern that the Judge is biased towards the prosecutors and

the U.S. Attorney's Office, and is prejudiced against Strauss.

      As noted by ethics expert Seymour, the "perception of personal bias in this matter is

heightened due to the judge's expressed affinity or affiliation with the federal prosecutor."

Exhibit 4 at 8.

      At the very least, Strass is justified in reasonably believing there is an objective

appearance of the lack of impartiality.

---

[9] https://www.justice.gov/usao-sc/meet-us-attorney ("From 2013 to 2017, Boroughs clerked for
Judge Gergel, where she worked on a number of high-profile cases").

motion for recusal 2023-12-06

## E. TOTALITY OF THE CIRCUMSTANCES

Judge Gergel has previously recused himself from cases when "the public might

reasonably believe there is a lack of impartiality."  *Sanders v. United States*, C.A. No. 2:16-cv-

2356-RMG (D.S.C. Jan. 28, 2020), ECF # 54; *Backus v. State of South Carolina*, C.A. No. 3:11-

cv-3120; *United States v. Dong*, C.A. No. 2:11-cr-00510-RMG (Sept. 13, 2012), ECF # 189.

In his *sua sponte* order of recusal in the criminal case of *United States v. Dong*, at ECF #

189, Judge Gergel recognized that the question of recusal should take into consideration the

totality of the circumstances.  In recusing himself, Judge Gergel stated that "the undersigned …

hereby recuses himself pursuant to the provisions of 18 U.S.C. § 455(a) on the basis that ***under***

***the totality of circumstances*** present in this matter ***his 'impartiality might reasonably be***

***questioned*.'" *Id.* (emphasis added)

Ethics expert Seymour opined in her Affidavit (Exhibit 4 at 9-10) as follows:

Canon 3(C)(1) of the Code of Judicial Conduct for U.S. Judges (effective March 12,
2019) states that "[a] judge shall disqualify himself or herself in a proceeding in which
the judge's impartiality might reasonably be questioned[.]" The Canon goes on to provide
some examples of circumstances where such may occur, including "personal bias or
prejudice concerning a party[.]" However, the issue of judicial recusal involves more than
actual bias and can be required where a judge's "impartiality might reasonably be
questioned." This is based on an objective standard whether "a reasonable well informed
observer" outside the judiciary "might reasonably question [the judge's] impartiality on
the basis of all of the circumstances." The purpose of this judicial disqualification
standard is to preserve public confidence in the integrity and impartiality of the federal
judiciary by requiring recusal where there might be a public perception of a lack of
impartiality or fairness by a judge sitting in a particular matter. The question of recusal is
broader than the issue of personal bias, extending to the potential appearance of partiality
and public confidence in the integrity and fairness of the judicial process. The Court's
duty to avoid even an appearance of impartiality must ultimately be decided on an
objective standard designed to preserve public confidence in our system of justice. This
provision provides an objective standard and does not require a showing of actual bias.

When the factors and circumstances enumerated above are considered in their totality, a

reasonable, well-informed observer would objectively question Judge Gergel's impartiality with

respect to Strauss in the case at bar. As opined by ethics expert Seymour, "the judge's threat to file a disciplinary complaint against Mr. Strauss for asserting his Fifth Amendment rights, in direct contravention of established law; his stated opinions in the civil case that the transactions appeared "'dubious,'" "'surreptitious,'" "'illegal,'" and "'unlawful;'" and, his language suggesting he is in alliance with the U.S. Attorney combine to raise a reasonable question about his impartiality." Judge Gergel's extra-judicial investigations to obtain information and evidence in the Fund 35-EWB Case, as well as his *ex parte* communications with respect thereto, are additional circumstances which, when taken in their totality, reasonably raise a question as to Judge Gergel's impartiality towards Strauss. At the very least, in order to avoid an appearance of partiality, Judge Gergel should be recused or disqualified from this case at bar.

Judge Gergel, in the *Dong* case, further stated as follows:

> [T]he issue of judicial recusal involves more than actual bias and can be required where a judge's "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). This is based on an objective standard of "a reasonable well informed observer" who is aware of all of the facts and circumstances. *United States v. DeTemple*, 162 F.3d 279, 286 (4th Cir. 1998). The purpose of § 455(a) is to preserve public confidence in the integrity and impartiality of the federal judiciary by requiring recusal where there might be a public perception of a lack of impartiality or fairness by a judge sitting in a particular matter. *See United States v. Bobo*, 323 F. Supp. 2d 1238, 1242 (N.D. Ala. 2004).

Judge Gergel should abide by his previously pronounced standards for recusal and, in an abundance of caution, be disqualified from this proceeding in order to avoid an appearance of impropriety and an appearance of lack of impartiality pursuant to 28 U.S.C. §§ 144 and 455 and the Due Process Clause.

## F.  DISCOVERY IS WARRANTED

Based upon Judge Gergel's above referenced extra-judicial and *ex parte* communications and investigations, discovery is warranted so that "all of the circumstances" surrounding the impartiality analysis are known and the record can be supplemented for appeal. *In re Kensington*

*International Limited*, No. 03-4212 (3rd Cir. Dec. 18, 2003) (granting discovery on recusal when judge undertook *ex parte* communications because the question is "'whether a reasonable person knowing all the circumstances would harbor doubts concerning the judge's impartiality' — an inquiry which necessarily requires that we know all the circumstances.").  Defendant requests such discovery.

## ATTORNEY CERTIFICATION OF GOOD FAITH

The undersigned counsel for the Defendant certifies that this Motion and Defendant's Affidavit are made in good faith.[10]

## CONCLUSION

For the reasons set forth above, as well as any which may be advanced during any subsequent hearing on the Motion, Defendant Strauss respectfully requests that this Motion be granted and that Judge Gergel be recused or disqualified.  Defendant Strauss respectfully requests that this Motion be transferred to another District Judge within the District of South Carolina for determination, and discovery be allowed.  *Id.*; *Cherry*, 330 F.3d 658 n. 13; *United States v. Heldt*, 668 F. 2d 1238, 1271-72 (D.C. Cir. 1981); 28 U.S.C. § 144.

**SO MOVED.**

December 6, 2023                    Respectfully submitted,

Charleston, S.C.                      /s/ Joseph P. Griffith, Jr.
                                      Joseph P. Griffith, Jr., Esquire (Fed.I.D. # 2473)
                                      Joe Griffith Law Firm, LLC
                                      946 Johnnie Dodds Boulevard
                                      Mt. Pleasant, South Carolina 29464
                                      (843) 225-5563 (tel)
                                      (843) 722-6254 (fax)
                                      joegriffithjr@hotmail.com
                                      joe@joegriffith.com

---

[10] The undersigned counsel consulted with the Assistant U.S. Attorney handling this case and she has indicated she will oppose this Motion.

motion for recusal 2023-12-06

www.joegriffith.com

Attorney for Defendant Peter J. Strauss

Exhibits:

Exhibit 1  Transcript of 5/6/2019 hearing
Exhibit 2  Transcript of 5/9/2019 hearing
Exhibit 3  Strauss Affidavit
Exhibit 4  Seymour Affidavit

motion for recusal 2023-12-06